516 A.2d 1278

In Re: Petition of Edward J. Thompson for the Nomination of the Republican Party for Forty-fifth (45th) Senatorial District.

Heard February 14, 1984, by Judge DOYLE.

*John Lyons,* for petitioner.

*Thomas L. Wenger, Wix, Wenger & Weidner,* for respondent.

OPINION AND ORDER BY JUDGE DOYLE, March 2, 1984:

We have before us for consideration the petition of Darryl D. Granata to strike the nominating petition filed by Edward J. Thompson for the Republican party's nomination for the state senate in the 45th Senatorial District, which district is partially within Allegheny County and partially within the counties of Washington and Westmoreland. The challenge is made under Section 977 of the Pennsylvania Election Code (Code), Act of June 3, 1937, P.L. 1333, *as amended,* 25 P.S. §2937. A full hearing was conducted by this Court on February 14, 1984. At the conclusion of the hearing the parties were granted permission to file supporting briefs and additional written documentation. Both parties submit-

ted briefs and the respondent also submitted forty-one affidavits in support of the bona fideness of signatures challenged by the petitioner.[1]

The nomination petition of the respondent contains 224 signatures and is composed of six pages, the first four of which have two sides. Only 200 signatures are actually required under Section 912 of the Code, 25 P.S. §2872. In support of his attempt to strike the petition of the respondent, the petitioner produced only one witness, Mr. Mark Wolosik, who is the Supervisor of Balloting and Returns for the Allegheny County Department of Elections. The challenges of the petitioner may be separated into six categories, which we will address seriatim.

## A. SIGNERS WHO DO NOT RESIDE IN THE 45TH SENATORIAL DISTRICT

This challenge pertained to one person only, Vicki Afola (page 2, line 12) who resided in Plum Borough. Plum Borough is not in the 45th Senatorial District; it is in the 44th Senatorial District. 104 Pa. Code §1.1. This name will be struck from the petition.

## B. SIGNATORIES WHOSE SIGNATURE APPEARED TWICE ON THE NOMINATION PETITION

Here the petitioner made two challenges, both of which will be sustained by reference to the pages and

---

[1] Where the defects are de minimis, technical in nature or otherwise curable, the court in its discretion may allow amendments by the filing of affidavits. *See In re Nomination of Robert C. Sullivan* (No. 513 C.D. 1980, filed March 7, 1980); *In re Nomination Petition of Paul J. Martin* (No. 203 C.D. 1972, filed March 15, 1972) and *Meholchick v. Welebob* (No. 160 C.D. 1972, filed March 1, 1972). Of the forty-one affidavits filed by the respondent, fifteen were filed to support his petition for nomination in category "C", fourteen in category "E", and one in category "F". Since none of the affiants in these categories were stricken however, it is not necessary to discuss these affidavits.

lines indicated. The names of Joseph R. Forkel (page 3, line 19) and Robert F. Prokop (page 3, line 27) will be struck as being duplicates. This will leave untouched, however, for the purposes of the final count, the signatures of the named individuals appearing on page 2 of the petition.

## C. SIGNATURES CHALLENGED BECAUSE THEY WERE NOT REGISTERED AT ALL, OR WHO HAD BEEN STRUCK FROM THE VOTER REGISTRATION ROLES FOR NOT VOTING OR WHO WERE NOT ENROLLED MEMBERS OF THE REPUBLICAN PARTY, OR WHO WERE NOT REGISTERED AT THE GIVEN ADDRESS.

Under this category, there were fifty-three total signatures challenged. At the outset, however, nine challenges were withdrawn by the petitioner.[2] Of the forty-four remaining signatures, the testimony of Mr. Wolosik established that eleven were proper and were duly registered and enrolled members in the Republican Party at the address stated within the 45th Senatorial District. Those signatures are therefore valid, and the petitioner's challenges as to them are dismissed.[3]

---

[2] Objections to the following were withdrawn by the petitioner (N.T. 10, 11):

| Page 1, line 6 | - Carol Gamble |
| Page 1, line 9, | - Shirely Bakos |
| Page 1, line 10, | - James Bailey |
| Page 1, line 41, | - Robert Svedberg |
| Page 1, line 42, | - Miriam Svedberg |
| Page 2, line 1, | - Carol Thompson |
| Page 2, line 2, | - Ed Thompson |
| Page 2, line 18, | - James Gori |
| Page 4, line 39, | - Tom ? (N.T. 40) |

[3] The following names were found to be properly registered in the Republican Party at the address stated in the petition:

Page 2, line 4,     - Michael Artman (N.T. 13)

Mr. Wolosik further testified that an additional four signatures were those of persons who were registered Democrats.[4] Since Section 907 of the Code requires that in a primary election only those persons registered in the political party of the candidate may lawfully sign his petition, the names of the four Democrats must be struck.

It becomes necessary at this juncture to address respondent's objection to the testimony of Mr. Wolosik as it related to the other challenges in this general category, that is, persons who were challenged because they were not properly registered or were not registered at the address given in the petition. On direct examination, Mr. Wolosik stated that he had been an employee of the Allegheny County Department of Elections for twelve years, that he was Supervisor of Balloting and Returns, and that his duties included checking the nominating petitions and maintaining the voter registration records (N.T. 7). After this cursory explanation, he then proceeded to testify, without objection by the re-

---

| Page 2, line 10, | - Robert Prokop (N.T. 14) |
| Page 2, line 11, | - Loren Jerome (N.T. 14) |
| Page 2, line 13, | - Jody Willard (N.T. 16) |
| Page 2, line 14, | - Pat Gallo (N.T. 16) |
| Page 2, line 24, | - Jim Abraham (N.T. 17) |
| Page 3, line 15, | - Avanalist Jackson (N.T. 24) |
| Page 3, line 34, | - William J. Halt (N.T. 29, 30) |
| Page 3, line 42, | - William Jamison (N.T. 31) |
| Page 4, line 23, | - Debra Gedman (N.T. 39) |
| Page 5, line 24, | - Beverly McCurry (N.T. 42) |

[4] Verified as being registered Democrats were the following:

| Page 2, line 34, | - Mary Bernardi (N.T. 19) |
| Page 3, line 11, | - Bruce Rush (N.T. 23) |
| Page 5, line 13, | - J. Boyce (N.T. 41) |
| Page 5, line 23, | - George W. Bickerton (N.T. 42) |

spondent, regarding the registration, or non-registration of each person challenged as their names were recited to him by counsel (N.T. 12-42). Other than those withdrawn from contest or found to be either proper or improper because they were registered Republicans or Democrats, in which case there were registration cards for verification, he related that all other challenged signers in this category were not proper signatories for at least one of several reasons; either they were not registered at all, or they had been struck from the rolls for not voting within two years resulting in their registration being suspended,[5] or no one by the name searched was registered at the given address; all testimony involving a negative finding and conclusion. On several occasions the witness related that there was no record of anyone by the stated name registered anywhere in Allegheny County. Since the 45th Senatorial District is not entirely subsumed within Allegheny County, however, this "search" cannot be accepted as being exhaustive.

On cross-examination it was also brought out that Mr. Wolosik was *not* the supervisor of the voter registration department, was *not* in charge of the registration cards and had no particular responsibility for them other than bringing them to Court (N.T. X2).[6] Furthermore, he was *not* in charge of the computerization of the voters registration list. Since *all* of his testimony with regard to the searches made showing a negative

---

[5] *See* Section 38 of The Permanent Registration Act, 25 P.S. §951-38, *as amended*.

[6] Because of time constraints the 131 pages of testimony from the hearing were transcribed in two sections. The designation (N.T. X) refers to the cross-examination testimony of Mr. Wolosik; the designation (N.T.) to the transcript of all other testimony. The cross-examination testimony is referred to at N.T. 91.

result, *i.e.*, the *absence* of a registered voter at a particular address, was based solely upon the *computerized* voters list (N.T. 91-96), his testimony became immediately suspect. He candidly admitted that he had only "minimal responsibility" for the registration forms and his entire testimony with regard to the proper registration of the persons challenged was completely based on the information supplied to him by the Chief Registrar contained in a written list on a yellow scratch pad (N.T. X2-10). He admitted that he himself did not conduct the search but that it was conducted by the Chief Registrar and the results were given to him (N.T. X5, 6). The testimony of this witness in this regard therefore was palpably hearsay and will be ignored by the Court.[7] Additionally, there is a more compelling reason why the testimony of Mr. Wolosik cannot be accepted. His testimony on cross-examination disclosed that the process used in the compilation of the computerized voter registration list was "cut off" on December 14, 1983, and that after that date the name of any newly registered voter had only a "50/50" chance of being inserted into the computerized makeup of the Allegheny County records (N.T. X11-13). In direct response to questions from the bench, his testimony was as follows:

---

[7] Counsel for Respondent did object to the testimony of the witness after the witnesses' answers revealed the hearsay nature of the testimony. The Court took under advisement this objection and the argument of petitioner's counsel that the objection was untimely made. The Court sustains the objection and has ignored the hearing testimony. *See Forster v. Rogers Bros.*, 247 Pa. 54, 93 A. 26 (1915). The lack of public records might have been readily proven by adherence to the uncomplicated statutory method provided by Sections 6103(b) and 6104 of the Judicial Code, 42 Pa. C. S. §§6103(b), 6104. Computer print outs are also admissible if properly authenticated. 42 Pa. C. S. §6108.

THE COURT: . . . If someone registered January 5th would they show on the computer records as of January 31st?

THE WITNESS: It's possible they could. I can't given [sic] an exact answer for each.

THE COURT: Is it possible they could not?

THE WITNESS: It's possible they could not. (N.T. X14)

By reference to the date that the signators signed the petition, *i.e.*, between January 19th and January 30th, it is abundantly clear that those challenged for not being registered might very well have been registered on the date they signed, but their names would not appear on the lists which formed the basis of the search.

In those instances where the voter was suspended for not voting, cards were sent out in the second week of January advising them to return the card if they did not wish to be suspended. The voters' names would be taken out of the computer list when the cards were sent in January. But even if the card was properly returned by the voter, it was very possible his name would not have been put back into the computerized list before the search was made by the registrar's office (N.T. X16-21).

Since the testimony of the witness was based solely on the computer records of the county's registration department, it is clear that his testimony as to the absence of a name on the roles of registered electors could be grossly inaccurate. Any conclusion that a particular named person who signed the respondent's nominating petition was not a properly registered voter, based upon the testimony of this witness, would be egregious error.

The net result of the fifty-three challenges under this category therefore is that only those four persons established as registered Democrats will be struck.

## D. FRAUDULENT SIGNATURES

The petitioner has challenged fifty-eight signatures where the crux of the allegation is that the signature on the nominating petition is not that of the registered elector based on a comparison with the elector's official registration card on file with the Department of Elections. Initially, the petitioner withdrew seventeen names from this category of challenge.[8] The official registration cards from the Allegheny County Department of Elections were introduced and offered into evidence (N.T. 97). Unlike the other conclusory testimony of Mr. Wolosik, the witness in this instance stated that the records proferred were, within his personal knowledge, the actual and authentic records of the County of Allegheny (N.T. X7). After careful examination and close scrutiny, the Court is of the opinion that by a comparison of the signature on the registration card with the signature on the nominating petition, nineteen of the

---

[8] The petitioner withdrew challenges to signatures on the petition as follows (N.T. 48 unless otherwise indicated):

| | | |
|---|---|---|
| Page 1, line 22, | - | Wilburt Mitchell |
| Page 1, line 23, | - | Betty Jo Mitchell |
| Page 1, line 34, | - | Donna Patterson |
| Page 1, line 35, | - | Harrison Patterson |
| Page 1, line 36, | - | Robert Walter |
| Page 1, line 37, | - | Dorothy Walter |
| Page 1, line 43, | - | Donald Hart |
| Page 1, line 44, | - | Elmer Hart |
| Page 2, line 43, | - | Frank McIntosh |
| Page 2, line 44, | - | Betty McIntosh |
| Page 3, line 45, | - | Joyce Lewis |
| Page 3, line 46, | - | Charles Lewis |
| Page 4, line 9, | - | M.B. Kraeger (N.T. 79, 80) |
| Page 4, line 10, | - | Amelia Kraeger (N.T. 79, 80) |
| Page 4, line 28, | - | Margaret Gore (N.T. 88) |
| Page 4, line 35, | - | Alice Hess |
| Page 4, line 36, | - | Charles Hess |

signatures are not genuine and were in fact placed on the respondent's nomination petition by persons other than the registered voters whose signatures they purport to be. The names of the following persons are therefore struck from the nominating petition of the respondent:

| | |
|---|---|
| Page 1, line 28 | - John T. Benedek[9] |
| Page 1, line 31 | - Bruce A. Baumgartner[10] |
| Page 2, line 20 | - Debra L. Benack |
| Page 4, line 6 | - Rose Capristo |
| Page 4, line 8 | - Robert J. Cunningham |
| Page 4, line 14 | - Karen Jubak |
| Page 4, line 15 | - Hugh Jackson |
| Page 4, line 16 | - Richard A. Jackson |
| Page 4, line 18 | - Charles E. Murtha |
| Page 4, line 19 | - Gloria T. Murtha |
| Page 4, line 20 | - Agnes M. Polatas |
| Page 4, line 21 | - Bernard M. Polatas |
| Page 4, line 22 | - Mary Lou Gedman |
| Page 4, line 23 | - Deborah M. Gedman |
| Page 4, line 24 | - Jeff Gedman |
| Page 4, line 25 | - Bernard A. Gedman |
| Page 4, line 26 | - Anna Jackson |
| Page 4, line 27 | - Joseph DeRose, Sr. |
| Page 4, line 29 | - Joseph Cmar |

The Court is fully cognizant of the gravity of the challenge on these grounds and is equally convinced

---

[9] The signature on the affidavit of John T. Benedek matched the signature on the nominating petition, but did *NOT* match the signature on the permanent registration card. Certain characteristics of the signatures on the petition and affidavit show great similarity to the signature of Rosalie A. Benedek.

[10] The signature on the affidavit does *NOT* match that on the petition or the voter registration card, but these latter two are identical.

that signatures should not be set aside except in the most clear case. Nevertheless, the Court is firmly of the opinion that the signatures of those persons above named, which were affixed to the nominating petition, were clearly not genuine and bore no similarity to the paired signature on the individual's official registration card. Accordingly, they will be struck from the petition. Serious doubts regarding other signatures appearing on the petition were resolved in favor of the respondent since the Court was not absolutely convinced that these signatures were not genuine.

There were in this general category seven persons who were officially challenged on the basis of the genuineness of the signatures but who were in fact challenged on the basis that they were not registered at all, *i.e.*, no official registration card was produced for them. Since the basis of the petitioner's proof was the testimony adduced from Mr. Wolosik, based on the same hearsay information and fraught with the same inconclusive judgment, the challenges as to these seven names must also fail.[11]

---

[11] No corresponding permanent registration card was produced for the following:

| | |
|---|---|
| Page 2, line 15, | - Stanley Laschic (N.T. 64-67) |
| Page 2, line 16, | - Mildred Laschic (N.T. 64-67) |
| Page 4, line 2, | - John Zelesnck (N.T. 76) |
| Page 4, line 3, | - Eva Zelesnck (N.T. 76) |
| Page 4, line 17, | - Thelma Alshouse (N.T. 81, 82) |
| Page 6, line 7, | - John Ferrance (N.T. 91) |
| Page 6, line 8, | - Dorothy Ferrance (N.T. 91) |

## E. SIGNATURES CHALLENGED ON THE BASIS THAT THE ADDRESS, OCCUPATION AND DATE HAD NOT BEEN WRITTEN IN BY THE ELECTOR PURPORTING TO HAVE SIGNED THE PETITION

Section 908 of the Code, 25 P.S. §2868, provides, in addition to the requirement that each elector must sign the petition, that:

He shall add his occupation and residence, giving city, borough or township, with street and number, if any, and shall also add the date of signing, expressed in words or numbers. . . .

In this instance the challenge relates to the entire side of page 4 of the nominating petition, consisting of lines 1 through 29. In the opinion of the Court, lines 14 through 29 clearly were written in the same handwriting, but of these fifteen lines, thirteen signatures have already been stricken as being not genuine. It is nevertheless apparent that one hand wrote all of the information regarding the various signers' residences, etc; and perhaps even executed the signatures themselves. The two remaining signatures, those of Thelma Alshouse on line 18 and Margaret Gorr on line 28, successfully ran the gauntlet of the authenticity challenge simply because no permanent registration card was produced for either of them. There was therefore nothing against which to make the necessary comparison.

It was also very apparent that the information written on lines 5 and 6, lines 7 and 8 and lines 9 and 10 was written by three different persons, not six.

It is readily discernible that Frank Capristo (line 5) signed his own name and then completed the information for Rose Capristo on line 6. But as her signature has already been stricken this additional reason for striking is superfluous.

A similar situation presents itself on lines 7 and 8. Beverly Cunningham signed and completed the information on both lines. Her own signature on line 7 was not struck but the signature of Robert Cunningham on line 8 was struck under the prior attack. The additional fault is of no consequence.

On lines 9 and 10 a slightly different situation exists. Although obviously in the same handwriting, the objection to both signatures on the two lines (M.B. Kraeger and Amelia B. Kraeger) was withdrawn by the petitioner (N.T. 79, 80). They were challenged earlier for not being registered (N.T. 23, 40), unsuccessfully. No permanent registration card was produced for either elector. Both must be counted.

## F. A CHALLENGE TO THE PROPER REGISTRATION OF STEPHEN G. SEMAN AS CIRCULATOR OF PAGES TWO AND SIX OF THE PETITION

The petitioner's challenge here must meet the same fate that applied to the other signatories who were alleged not to be properly registered. The circulator, Stephen G. Seman, II, by his signed affidavits affixed to the pages mentioned, acknowledged, *inter alia,* that he was a qualified elector when he circulated the petitions between January 20, 1984 and January 30, 1984, which were the earliest and latest dates inserted opposite the names on the first line of page two and last line on page six. He would have had to have been a registered elector in the Republican party on or before January 20, 1984 in order for the petitions which he circulated to be valid. Section 909 of the Code, 25 P.S. §2869, *as amended.*

Mr. Wolosik testified that there was no valid registration for a "Steven [Stephen] Seman at 425 Farnsworth Avenue in Clairton" (N.T. 23) and that according

to the street list for the appropriate precinct/district (Second Ward, 6th District) in Clairton, at 425 Farnsworth Avenue only Edward D. Caton and Susan Caton were registered (N.T. 93-95). The street list, however, was computer generated; it was prepared in the *second* week of January, 1984 (Monday, January 8th through Friday, January 13th by judicial notice); it was not prepared under Mr. Wolosik's direction, and the last date any new registrant could have been added to the list was December 14, 1983 (N.T. 93-96). If an elector, such as Stephen Seman II, had registered on January 5th Mr. Wolosik did not know if that elector would have been on the street list, and if someone registered on January 20th, his name would definitely not be on the list (N.T. 96). Obviously, from the testimony of Mr. Wolosik, we are absolutely uncertain if the circulator, Stephen Seman II, was a qualified elector when he began circulating the petition on January 20th. His testimony was so apparently inconclusive that it cannot support a successful challenge to the qualifications of the circulator and the petition to strike.[12]

---

[12] The respondent also submitted a supporting affidavit executed by Stephen G. Seman II alleging that he did circulate the nomination petitions for the respondent. The affidavit states however that "he is currently and was on or before *January 31, 1984* a qualified elector resident in the 45th Senatorial District. . . ." (Emphasis added.); "4. That he signed with the Board of Elections of Allegheny County a duly executed form of registration as a resident of the 45th Senatorial District as a registered member of the Republican Party," and that "5. That he *subsequent* to said registration circulated and affirmed a nominating petition on behalf of the State Senatorial candidacy of Edward Thompson. . . ." (Emphasis added.) The affidavit fails to state in the affirmative that the affiant was a

In conclusion, we have then the following tally:

| | | |
|---|---|---|
| Total number of signatures on petition | | 224 |
| Struck because of nonresidence in 45th Senatorial District | 1 | |
| Struck as duplicated signatures | 2 | |
| Struck as signatures of registered Democrats | 4 | |
| Struck for lack of genuineness | 19 | |
| Less total signatures struck | | 26 |
| REMAINING VALID SIGNATURES | | 198 |

The number of remaining vaild signatures thus being below the required number of 200, we will enter the following

ORDER

Now, March 2, 1984, the prayer of the above petition to strike off the nomination petition is granted and the Nomination Petition of Edward J. Thompson for the Office of Senator in the Senate of Pennsylvania from the 45th Senatorial District of the Commonwealth of Pennsylvania in the Republican Primary to be held April 10, 1984 is set aside. The Secretary of the Commonwealth is hereby directed not to certify the name of said Edward J. Thompson to the proper officials for inclusion on the ballot.

The prothonotary is directed to notify forthwith the parties hereto, or their counsel, of this order and also so certify a copy hereof to the Secretary of the Commonwealth of Pennsylvania.