540 A.2d 606

In Re: Nomination Petition of Grady A. Freeman as Democratic Candidate for Office of Ward Executive Committee for the 51 Ward, 5 Division. Vivian T. Miller/51 Ward, Appellant.

In Re: Nomination Petition of Harold Barksdale as Democratic Candidate for Office of Ward Executive Committee for the 51 Ward, 10 Division. Renee Savior/51 Ward, Appellant.

In Re: Nomination Petition of Bernard Norwood as Democratic Candidate for Office of Ward Executive Committee for the 51 Ward, 12 Division. Vivian T. Miller and 51 Ward, Appellants.

In Re: Nomination Petition of Ronald Jackson as Democratic Candidate for Office of Ward Executive Committee for the 51 Ward, 6 Division. Vivian T. Miller and 51 Ward, Appellants.

In Re: Nomination Petition of Rodney Goldston as Democratic Candidate for Office of Ward Executive Committee for the 51 Ward, 25 Division. Alfreda Harris/51 Ward, Appellant.

In Re: Nomination Petition of Michael Gibbs as Democratic Candidate for Office of Ward Executive Committee for the 51 Ward, 15 Division. Ronald J. Sharper/51 Ward, Appellant.

In Re: Nomination Petition of William M. Tyson as Democratic Candidate for Office of Ward Executive Committee for the 51 Ward, 15 Division. Ronald J. Sharper/51 Ward, Appellant.

In Re: Nomination Petition of Steven Kennedy as Democratic Candidate for Office of Ward Executive Committee for the 51 Ward, 18 Division. Lottie Bazemore/51 Ward, Appellant.

In Re: Nomination Petition of Albert R. Lacy, Jr. as Democratic Candidate for Office of Ward Executive Committee for the 51 Ward, 16 Division. Vivian T. Miller and 51 Ward, Appellants.

In Re: Nomination Petition of James H. Peddy as Democratic Candidate for Office of Ward Executive Committee for the 51 Ward, 25 Division. Alfreda Harris/51 Ward, Appellant.

In Re: Nomination Petition of Aljia Dumas as Democratic Candidate for Office of Ward Executive Committee for the 51 Ward, 14 Division. Demetrius Monk and Vivian Miller and 51 Ward, Appellants.

302

Heard March 31, 1988, before Judges DOYLE, PALLA-DINO and SMITH, sitting as a panel of three.

*Ronald J. Sharper,* for appellants.

*Robert J. Mulligan, Robert J. Mulligan, Inc., P.C.,* for respondents Freeman, Norwood, Gibbs, Tyson, Kennedy, Lacy, Peddy and Dumas.

No appearance for respondents Barksdale, Jackson and Goldston.

OPINION BY JUDGE DOYLE, April 8, 1988:
Before us for disposition are the appeals in eleven election cases where the Court of Common Pleas of

Philadelphia County dismissed, by eleven successive orders on March 2, 1988, the Petitions to Set Aside the Nomination Petitions of eleven candidates for Democratic committee posts in the Fifty-first Ward of Philadelphia.[1] Each such nomination petition for Ward Executive Committee was required to have the valid signatures of at least ten registered and enrolled members of the Democratic Party. Section 912.1 of the Pennsylvania Election Code (Code), Act of June 3, 1937, P.L. 1333, *as amended,* 25 P.S. §2872.1.[2] All of the Petitions to Set Aside were filed on February 23, 1988, were heard by the common pleas court on March 1, 1988, and were dismissed by one sentence orders signed the following day, March 2, 1988, entered of record on March 4, 1988. An opinion of the court, dated March 21, 1988, followed in each instance and was entered on March 22, 1988. Between the date the orders were entered and the date the accompanying opinions were filed, however, timely Notices of Appeal were filed on March 14, 1988. This opinion is written in support of our orders affirming the trial court. Our orders were entered on April 4, 1988.

We critically note at this juncture, that the notes of testimony from the hearings on March 1 apparently were never transcribed and no transcriptions were ever received as part of the certified record to this Court. We particularly note that the record, as certified, is further devoid of any order for transcription as required by Pa. R.A.P. 905(b)(1). The absence of the transcribed

---

[1] Both major political parties are governed by a party structure whereby two committee persons are elected every two years from each voting precinct or division. *See* Section 807 of the Pennsylvania Election Code·(Code), Act of June 3, 1937, P.L. 1333, *as amended,* §807, 25 P.S. §2837.

[2] Section 912.1 of the Election Code was added by Section 2 of the Act of December 12, 1984, P.L. 968.

notes of testimony from the hearings obviously makes appellate review extremely difficult, and as to some issues where the appeal ordinarily would be predicated upon a review of the record evidence, appellate review would be palpably impossible. The responsibility for the state of the record, of course, barring further explanation, rests with Appellants. Fortunately, as will be explained, we are able to address the issues presented to us on appeal here because of the cooperation of counsel.

Before reaching the merits, however, a threshold procedural issue has been presented, an understanding of which cannot be comprehended without some explanation regarding the individual candidate-nominees, and the appellant-petitioners who challenged their nominating petitions. They are as follows:

| Candidate | Division | Petitioner |
|---|---|---|
| Grady A. Freeman (No. 659 C.D. 1988) | 5th | Vivian T. Miller, "Representative of the Democratic Political Party" |
| Harold Barksdale (No. 660 C.D. 1988) | 10th | Renee Savior |
| Bernard Norwood (No. 661 C.D. 1988) | 12th | Vivian T. Miller, "Representative of the Democratic Political Party" |
| Ronald Jackson (No. 662 C.D. 1988) | 6th | Vivian T. Miller, "Representative of the Democratic Political Party" |
| Rodney Goldston (No. 663 C.D. 1988) | 25th | Alfreda Harris |

| | | |
|---|---|---|
| Michael Gibbs (No. 664 C.D. 1988) | 15th | Ronald J. Sharper, Esq. |
| William M. Tyson (No. 665 C.D. 1988) | 15th | Ronald J. Sharper, Esq. |
| Steven Kennedy (No. 666 C.D. 1988) | 18th | Lottie Bazemore |
| Albert R. Lacy, Jr. (No. 667 C.D. 1988) | 16th | Vivian T. Miller |
| James H. Peddy (No. 668 C.D. 1988) | 25th | Alfreda Harris |
| Aljia Dumas (No. 669 C.D. 1988) | 14th | Demetrius Monk |

With the Notices of Appeal filed on March 14th, there was also filed with the Prothonotary of the Court of Common Pleas of Philadelphia County on behalf of "The 51st Ward Democratic Executive Committee," a Petition for Leave to Appeal *In Forma Pauperis* (IFP), pursuant to Pa. R.A.P. 552. Paragraph one of that petition alleges that, "The 51st Ward Democratic Executive Committee is the petitioner in the above-captioned matter," despite the fact that in six of the eleven Petitions to Set Aside a specific named individual was identified as the petitioner and was identified in paragraph one of each petition as follows: "[t]he Petitioner is a duly qualified elector and is a registered Democrat in the above named Ward and Division."[3] No further identifi-

---

[3] We note that Ronald Sharper, Esquire, who is counsel of record for all of the Petitioners as well as the counsel for the 51st

cation was made. Moreover, each individual petitioner signed the petition, *as an individual petitioner,* and further signed a verification, pursuant to Pa. R.C.P. Nos. 76, 1024 and 18 Pa. C. S. §4904, that he or she was the petitioner.

In another Petition to Set Aside (No. 667 C.D. 1988 where the candidate is Albert R. Lacy, Jr.), Vivian T. Miller was the *individual* petitioner without further identification; the same identification in paragraph one was made; and the petition contained the signature of Vivian T. Miller as an individual with the same verification. Only in three instances[4] was the petitioner Vivian T. Miller remotely identified as a representative of the 51st Ward Executive Committee, and in those three instances she was not identified as a party official, a committee person, or a duly appointed or elected individual authorized to represent the Ward Executive Committee, and no representation was made that the 51st Ward Executive Committee was an incorporated or unincorporated association, or was a recognized and official part of the Democratic Committee of Philadelphia County. *See* Section 807 of the Code, 25 P.S. §2837.

Of critical significance we further observe that neither the common pleas court nor the clerk of the lower court ever entered an order *granting* IFP status pursuant to Pa. R.A.P. 552, nor could counsel representing the Appellants assure this Court at oral argument that such an order was ever entered. It is clear that no such order is in the certified record, nor is any indicated as having been entered in the docket of the Prothonotary; and no copy of such an order was present-

---

Ward Democratic Executive Committee, is an individual petitioner in two instances. No motion to challenge the standing of any individual was ever made.

[4] The Petitions to Set Aside the nominations of Grady A. Freeman, Bernard Norwood and Ronald Jackson.

ed to us at any time even *dehors* the record. It is abundantly clear, therefore, that the 51st Ward Executive Committee was never a party to any of the proceedings below and Appellants are the eight individual petitioners. With this procedural matrix as a setting, eight of the candidates filed a "Motion for Dismissal of All Appeals," which we will consider as one motion in the nature of a motion to quash. They contend, *inter alia*,[5] that the 51st Ward Executive Committee was not and is not now a party, and if it ever was a party, it should be denied IFP status. Because we hold that, as a matter of record, the 51st Ward Executive Committee was never a party, never petitioned to intervene as a party,[6] and

---

[5] The eight candidates also included in their motion to dismiss, a motion to consolidate the appeals, which we grant by separate order filed today, and a motion to dismiss on the grounds that Appellants' briefs were untimely filed, which we deny by separate order filed today.

[6] The question of whether a Ward Executive Committee has *standing* to intervene as a party was never raised by the Appellees. However, if the issue of standing is jurisdictional in nature, we would be obliged to address the issues *sua sponte*.

We have determined that the issue is *not* jurisdictional and that a proper committee of a political party may become a party if it otherwise complies with all of the other general requirements of standing as set forth by our Supreme Court in *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269 (1975).

There is no question that a county committee of a political party has standing to object to the nomination petition of a candidate for a county-wide office. *Appeal of Robert C. Barlip*, 59 Pa. Commonwealth Ct. 178, 428 A.2d 1058 (1981). There we held that because such a committee would have a "direct and substantial interest in the compliance of candidates who seek its nomination with all of the election laws, it [therefore] has standing to seek the setting aside of such candidates' nominating petitions." *Id.* at 182, 428 A.2d at 1060. If a Ward Executive Committee would be otherwise qualified as a proper committee, it, too, would have a similar interest and thus have standing to litigate as a party. The ancillary

never properly identified itself as required by Pa. R.C.P. Nos. 2151, 2152 (assuming it to be an unincorporated association), the issue of its IFP status is moot.

Some further preliminary remarks are called for because, in the absence of the transcribed notes of testimony, we would ordinarily hesitate to venture further to address the merits of the appeals. Generally, our course would be to remand the matter or at least to grant a continuance and await the completed record. However, because this is an election matter where time is an important, if not critical factor, *see* Section 977 of the Code, 25 P.S. §2937, and more importantly, because we find, after reviewing Appellants' briefs and hearing oral argument, that the issues are capable of disposition without the notes of testimony, we shall forge ahead. We are, in this respect, appreciative of the candid and forthright representation of appellants' counsel agreeing that the issues are capable of disposition without those records, and his further representation to the court in many instances that indeed, no testimony was even offered.

With these preliminary matters disposed of we now address the substance of the eleven appeals, seriatim.

---

question of whether the standing issue is also jurisdictional in nature has been answered by our Supreme Court in *Jones Memorial Baptist Church v. Brackeen*, 416 Pa. 599, 207 A.2d 861 (1965), as follows:

> The test of jurisdiction is the competency of the court to hear and determine controversies of the general class to which the case presented for consideration belongs. The question is whether the court has power to enter into the inquiry and not whether it is able to grant the relief sought in the particular case. Whether a plaintiff has a standing to institute an equity action does not involve a question of jurisdiction. . . .

*Id.* at 602, 207 A.2d at 863 (citations omitted).

*No. 659 C.D. 1988: Candidate—Grady A. Freeman*

Although the Petition to Set Aside challenged the Nomination Petition of Grady A. Freeman on numerous grounds, the opinion of the trial judge, Judge D'ALESSANDRO, states that the petitioner at the hearing challenged only on "grounds that (1) the petitions were not bound, and (2) numbered consecutively as required." Judge D'ALESSANDRO held that both grounds were amendable defects. We agree.

Freeman filed two nomination petitions, one containing seven signatures and the other six signatures. Ten valid signatures are required to qualify. By an examination of the date stamp of the City Commissioners, it is apparent that both petitions were filed on February 16, 1988 *at the identical time,* viz. 4:25 p.m. Appellant argues, despite this, the separate petitions were not in technical compliance with Section 909 of the Code, 25 P.S. §2869, which pertinently states, "[i]f more than one sheet is used, they shall be bound together when offered for filing if they are intended to constitute one petition, and each sheet shall be numbered consecutively beginning with number one, at the foot of each page." Judge D'ALESSANDRO held that under such circumstances "both grounds were amendable defects, and as such, that the nominee should not be stricken."

In support of her argument, Appellant Miller cites *Steel Nomination Petition,* 377 Pa. 260, 105 A.2d 139 (1954), as authority for interpreting the word "shall" in Section 909 as mandatory and not directory, and we agree with that principle. However, the holding in that case *permitted* a fifth unattached page to be included as part of the nomination petition where four pages had been filed in the Office of the Secretary of the Commonwealth two hours earlier that same day. The facts there indicate that the clerk who accepted the fifth page of the petition said, "I'll take that and attach it to the

petition he [Gibbs] filed," and later, upon telephone inquiry, the Secretary spoke to the person who filed the first four pages and informed him that "[i]t is now part of the petition." We believe the *holding* of *Steel* requires a similar result here where two pages of a nomination petition are handed *simultaneously* to a clerk across the counter; they are *obviously* part of the same petition and, if they are not "bound together" with a paper clip, staple, or other fastener, and if they are not numbered "1" and "2," there can be no reasonable doubt under the circumstances that both pages comprise the candidate's petition and that such a defect is a material error apparent on the face of the petition which may be amended in accord with Section 977 of the Code.[7]

The other argument presented on appeal is that we should set aside the candidate's petition because, and only because, the candidate himself did not appear at the hearing and testify in his own behalf, thereby compelling the trial court to infer that such testimony would have been unfavorable to the candidate, which in turn would provide sufficient competent evidence to establish Appellant's case and, thereby, be sufficient to set aside the candidate's nomination petition. We cannot agree with this attenuated line of reasoning.

The underlying principle upon which Appellant relies was stated in *General Electric Credit Corp. v. Aetna Casualty & Surety Co.*, 437 Pa. 463, 477 n.18, 263 A.2d 448, 456 n.18 (1970), as follows:

> It is generally agreed that when a potential witness is available and appears to have special in-

---

[7] Section 977 of the Election Code pertinently provides: If the objections relate to material errors or defects apparent on the face of the nomination petition or paper, or on the face of the accompanying or appended affidavits, the court, after hearing, may, in its discretion, permit amendments within such time and upon such terms as to payment of costs, as the said court may specify.

formation relevant to the case . . . and where [her] relationship with one of the parties is such that the witness would ordinarily be expected to favor [that party], then if such party does not produce [her] testimony, the inference arises that it would have been unfavorable[.]

A very early Supreme Court decision articulated the principle in more general terms:

[W]here evidence which would properly be part of a case, is within the control of the party whose interest it would naturally be to produce it, and, without satisfactory explanation, he fails to do so, the jury may draw an inference that it would be unfavorable to him. It is an inference of fact, not a presumption of law.

*Hall v. Vanderpool,* 156 Pa. 152, 155, 26 A. 1069, 1071 (1893).

The application of such a principle in this instance, however, would not, *even if apposite,* shift the burden of proof from the Appellant to the candidate, especially in view of Section 977 of the Code which states explicitly that all nomination petitions shall be deemed valid unless successfully challenged by a proper Petition to Set Aside. Indeed, it was never made clear just what special information the candidate would have, that by inference of fact, would be adverse to the candidate personally. Since the only other issue (the pages were not numbered and bound together) even if true, is an amendable defect, what special knowledge would the candidate have, that would create an inference, that would disprove facts, which were, *arguendo,* admitted? This is not a situation where a party would have a compelling reason to come forward and testify. *See e.g., Brown v. Schock,* 77 Pa. 471 (1875) (where the plaintiff was inferentially identified as the cohort of a perpetrator of a fraud, and the plaintiff, asserting that he was a holder-

in-due-course of a promissory note, failed to appear at the trial to testify).

Finally, Pennsylvania courts have frequently stated that the missing witness rule does not apply if the witness was equally available to both parties, *Downey v. Weston*, 451 Pa. 259, 301 A.2d 635 (1973), which was the situation in this case.

The order of the trial court, therefore, is affirmed.

## No. 660 C.D. 1988: Candidate—Harold Barksdale

At the time of oral argument, counsel for Appellant stipulated that he was abandoning all issues except (a) the pages of the nomination petition, of which there were two, were not bound together nor numbered consecutively, and (b) certain signatures (twenty-five by number) were invalid because they were either not registered, registered but not members of the Democratic Party, or resided outside the confines of the tenth division. The two pages of the petition contained a total of forty signatures.

Regarding the first issue, we note from the date stamp of the City Commissioners that both pages were presented on February 16, 1988 at precisely the same time, viz. 4:59 p.m. This first argument, therefore, must fail for reasons already given.

Concerning the second issue, it would have been impossible for us to perform properly our appellate review except for the candid and forthright admission by counsel for Appellant that no testimony or other evidence was presented to dispute the signatures challenged. Instead, what occurred, as represented to us by counsel, was that the large binders containing the permanent voter registration affidavits and the elector's signature, which show whether an elector is registered and in which party, were left on a table in the courtroom, and the trial judge represented that he would

"take under advisement" the specific challenges made by Appellant. It is therefore inescapable that, even if the notes of testimony had been transcribed, they would be meaningless as a source of reference to arrive at any conclusion with regard to the individual elector's signature. In brief, the notes of testimony would be devoid of any evidence showing what the Appellant needed to establish to successfully challenge the candidate's petition. Under these circumstances there can be but one result, and we affirm the order of the trial court.[8]

### No. 661 C.D. 1988: Candidate—Bernard A. Norwood

We meet in this instance two issues only viz., (a) that the candidate did not appear and testify, and (b) nine signatures, of seventeen on the one page petition, were forgeries.

The first issue is disposed of by what has already been determined, and as for the second, counsel for Appellant informed the court during oral argument that no testimony was presented to dispute the authenticity of the signatures. We, thus, affirm the trial court's order.

### No. 662 C.D. 1988: Candidate—Ronald Jackson

Here, the only argument made to set aside the candidate's petition, and the only one apparently made before the common pleas court, is that all the dates on the nomination petition (nineteen on a one page petition) appear to be written by the same hand. Appellant contends that this court can now examine the petition and make that factual determination, strike the signatures, and set aside the nomination petition. Judge D'ALESSANDRO wrote in his opinion, "[w]ithout the

---

[8] We further note that even if the twenty-five challenges had been made good, since there were forty signatures in all the petition would, nevertheless, contain a sufficient nmber of valid signatures (40 - 25 = 15).

presentation of expert testimony on this issue, the court was unable to make a determination as to the validity of such a challenge." Counsel for Appellant again forthrightly advised this Court that no testimony, expert or otherwise, was presented so that the transcribed notes of testimony would be irrelevant. We, therefore, find no reason to disturb the factual findings of Judge D'ALESSANDRO, and will affirm his order.

### No. 663 C.D. 1988: Candidate—Rodney Goldston

The challenges to Mr. Goldston's one page petition, containing twenty signatures, are that the candidate himself did not appear and testify, which we reject as hereinbefore discussed, and that seven signatories did not reside within the confines of the division, two signatures were in the same handwriting, one elector was not registered, one signature was printed, and two signatures were chronologically out of order.

Judge D'ALESSANDRO correctly held that "[t]here is no requirement that signatures appear in chronological order. 25 P.S. §§2936, 2937. *Nomination Petition of Faye D. White-Hall,* No. 708 C.D. (1986)," and further that, "[a] review of the binder . . . indicated the divisional challenges also lacked merit." Because this determination then left only four challenges still viable, an insufficient number to reduce the twenty on the petition below the magic number of ten, Judge D'ALESSANDRO dismissed the Petition to Set Aside and we find no error in that disposition. Here again counsel admitted that he offered no testimony to substantiate his challenges. Having presented no evidence, the Appellant cannot now be heard to complain that what the trial judge reviewed (*i.e.* the binder) was incorrect.

*No. 664 C.D. 1988: Candidate—Michael Gibbs*

The unusual challenge presented to this candidate's petition (one page—seventeen signatures) is that Michael Gibbs himself was not a registered Democrat and therefore not qualified as a candidate for a committee post in the Democratic Party. At oral argument on appeal, Appellant refined this issue, arguing that the candidate was not a registered Democrat *when he signed the candidate's affidavit.* That affidavit, of course, states that the candidate—affiant is a registered and enrolled member in the Democratic Party which is required by Section 802 of the Code, 25 P.S. §2832.

The trial court in this instance stated "[t]he Court was presented with a registration card on March 1, 1988 indicating that Gibbs is a Democrat." Appellant's syllogism is that because the affidavit was notarized on February 16, 1988, the candidate must, of necessity, have signed the affidavit on or before that date (which we can accept); since Judge D'ALESSANDRO found that Mr. Gibbs was a Democrat on March 1, 1988, obviously Mr. Gibbs was not a Democrat on February 16, 1988. The fallacy in this argument, of course, is obvious; Judge D'ALESSANDRO did not find that the candidate *registered* on March 1st; only that he was presented with a registration card on March 1st that established the candidate was a registered Democrat. What the registration card stated regarding *when* Mr. Gibbs registered is not known, and of course, it was Appellant's burden to show when Mr. Gibbs enrolled as a member of his chosen party. The Petition to Set Aside was, therefore, properly denied.

*No. 665 C.D. 1988: Candidate—William M. Tyson, Jr.*

The only objections to the nominating petition of William Tyson are based upon challenges to individual

signatures either because the signers were not registered, or were not registered Democrats, or were written by the same person. Again, no testimony was offered by the Appellant and the trial court wrote that, "[u]pon review of the binder, the Court found that a significant number of challenges lacked merit, and that the required number of signatures remained to allow the nominee to proceed." Accordingly, we affirm the judgment of the trial court.

### No. 666 C.D. 1988: Candidate—Steven Kennedy

Although additional reasons were given in the Appellant's Petition to Set Aside, the only challenges maintained on appeal focused first on the objection to four of the thirteen signatures on the petition to nominate because they were not in chronological order. The second challenge is to the effect that because the nominee himself did not appear at the hearing and testify Appellant's accusation that the nominee had supported Republican candidates in the past should be taken as well founded. The trial court, however, found that, "[i]nconclusive evidence was offered as to the alleged support of Republicans." In addition to the lack of credible evidence to support the challenge, Appellant presented no legal reason, even if the facts were substantiated, why this would preclude the candidate's nomination. *See e.g., Nomination Petition of Smith,* 102 Pa. Commonwealth Ct. 180, 516 A.2d 797 (1986). Since we have already held, in disposing of previous challenges, that signatures need not appear in chronological order, we affirm the order of the trial court.

### No. 667 C.D. 1988: Candidate—Albert R. Lacy, Jr.

Mr. Lacy's petition was challenged on two grounds: (1) the dates written on all twenty-eight lines of the one

page petition were written by the same hand, and (2) the candidate, Albert Lacy, Jr. was not a laborer as stated in his petition.

Judge D'ALESSANDRO noted in his opinion that no expert witness was presented to testify as to the handwriting. He wrote that, "[w]ithout the presentation of expert testimony, the court was unable to determine that all dates were written in the same hand. As to challenge # 2, Albert Lacy, Jr., is a laborer, and testified to that fact."

At oral argument, counsel for Appellant maintained that we could *still* find that all twenty-eight dates were written by the same person, and so set aside the petition, despite the absence of expert testimony because, as represented to us, Mr. Lacy testified that he himself, as the circulator, filled in "some of the dates." To this assertion Appellee's counsel argued in reply, that Mr. Lacy testified the number was only twelve of the twenty-eight on the petition. We are hampered here of course by the lack of an adequate record and that inadequacy does give us pause. However, even accepting the representations of Appellant's counsel as correct, there would still be insufficient evidence to set aside the petition. We decline to hold, upon our separate and independent review, that the trial judge erred when he was unable to determine that all the dates were written by the same hand. Furthermore, even giving Appellant the benefit of any doubt, since Mr. Lacy testified that he only completed "some" of the dates, Appellant has still not met her burden of proof.

The second argument of Appellant was refined on appeal to a contention that Mr. Lacy, although a laborer, *was a laborer working for the United States Postal Authority* and was therefore "Hatched." Because Appellant could not direct us to any provision of the *Pennsylvania* Election Code that would preclude a federal em-

ployee from running for office, we find no merit to this argument. The provision of the federal Hatch Act prohibiting certain federal employees from running for elective office is 5 U.S.C. §1724 (1974). The penalty for running for elective office is removal from the federal government position. 5 U.S.C. §1725 (1979). The above-cited provisions of the Hatch Act were made applicable specifically to employees of the United States Postal Service pursuant to 5 C.F.R. §733.101 (1987). The Appellee's counter argument that as a laborer he is not covered by the federal law is irrelevant, because even if he was within the purview of the federal law, this Court would have no authority to remove him from his federal position, and even if we did, it would not be reasonable, or lawful to then also set aside his petition. Accordingly, we affirm the trial court's order.

### No. 668 C.D. 1988: Candidate—James H. Peddy

Of the twenty-eight signatures on the candidate's one page nominating petition, eight were challenged for various reasons and the remainder were challenged on the grounds that they were not signed in chronological order. The trial court correctly held that chronological order is not necessary and, even if the other eight were not meritless, the petition would nevertheless contain a sufficient number of valid signatures. The trial judge thus dismissed the Petition to Set Aside. We affirm on the same basis.

### No. 669 C.D. 1988: Candidate—Aljia Dumas

The last candidate to be challenged, Aljia Dumas, testified himself that he resided at 710 South 50th Street in Philadelphia and the trial court found that this address was in the 14th division of the 51st Ward. This disposed of the Appellant's first objection presented to the trial court, that Aljia Dumas did not reside in the

14th division. The only other issue presented on appeal is that the candidate's name, although correctly printed on the front page of the petition—the part where the electors sign—is nevertheless misspelled "Dum*es*" (instead of "Dum*as*") on the other side of the petition where the circulator's and candidate's affidavits appear. Although the nominee *signed* his name correctly, both as the circulator and as the candidate, Appellant argues that this printed misspelling of the candidate's last name on the reverse side of the petition was sufficient to "confuse" the electors and, therefore, his petition should be set aside. We must disagree. First, there is no indication that this issue was preserved for appeal since it was not in the Appellant's Petition to Set Aside, nor did the trial judge address the issue in his opinion. Furthermore, we find upon an examination of the petition itself that the last elector signed the petition on February 14, 1988, while the affidavits were not completed until two days later, on February 16, 1988. Such a defect is *de minimis*, and where defects are *de minimis*, technical in nature or otherwise curable, the court in its discretion may allow amendments. *Petition of Thompson*, 102 Pa. Commonwealth Ct. 110, 516 A.2d 1278 (1984). Even if left "unamended" and "uncured," however, we fail to see how this could have confused the electors who signed the candidate's Nomination Petition because immediately above their signatures when they signed appeared the candidate's name clearly and correctly printed.

In brief summary, then, we find that the trial court's findings and conclusions in each instance were without error and its orders to dismiss the eleven Petitions to Set Aside were correct in all respects. We affirm all eleven.

ORDER

AND NOW, April 4, 1988, the Orders of the Court of Common Pleas of Philadelphia County, dated March 2, 1988, are hereby affirmed.

---

CONCURRING OPINION BY JUDGE PALLADINO, April 11, 1988:

Although I concur in the result, I find it necessary to make some observations about the majority opinion because of my concern about the discussion of issues which need not be addressed to resolve these eleven cases.

The majority correctly holds on pages 308-309 that the 51st Ward Executive Committee was never a party and never petitioned to intervene in this case. Nonetheless, the majority does discuss the issue of standing. Majority op. at 308 n.6.

First, the majority, *sua sponte,* concludes that a ward executive committee has standing to challenge the nominating petitions of *divisional* candidates for the office of ward executive committee (each division elects two individuals to serve on the ward executive committee). Then the majority, again *sua sponte,* opines that the Pennsylvania Supreme Court has determined that standing is not jurisdictional.

Once the majority concluded that the 51st Ward Executive Committee was not a party and had not sought to intervene, any discussion of whether a ward executive committee would have standing to challenge the nominating petition of a divisional candidate and whether standing is jurisdictional is incorrect. Additionally, the cases cited, *Barlip* and *Jones Memorial Baptist Church,* are not necessarily dispositive of those issues. Any indication of how this court would resolve them is presumptuous and premature. The resolution of these matters should be deferred until they are raised as issues before this court and counsel have had an opportunity to address them.