In re **NOMINATION PETITION OF Jesse BROWN as Democratic Candidate for Office of Pennsylvania Third Senatorial District.**

**Objection of Louis Agre and Shirley Kitchen.**

Commonwealth Court of Pennsylvania.

Heard March 12, 2004.
Decided March 26, 2004.
Publication Ordered April 28, 2004.

Louis S. Agre, Philadelphia, for petition-er.

Samuel C. Stretton, West Chester, for respondent.

OPINION BY Judge FRIEDMAN.

Louis Agre and Shirley Kitchen (Objectors) have filed a "Petition to Set Aside Nomination Petition" with respect to the Nomination Petition of Jesse Brown (Brown) as Democratic Candidate for Office of Pennsylvania Third Senatorial District (Nomination Petition). The Objectors maintain that Brown's Nomination Petition lacks the 500 valid signatures required to qualify Brown for the ballot.

By order dated February 27, 2004, this court scheduled a hearing for March 12, 2004. The order directed that, prior to the hearing, the parties meet with the Voter Registration Administrator at the Offices of Voter Registration to review each and every challenged signature. Following this review, the parties were to file a stipulation identifying: (1) the total number of signatures that Brown continues to claim are valid; (2) the total number of signatures the Objectors continue to challenge; (3) the total number of uncontested signatures remaining after the Objectors' challenges; and (4) for each and every signature which the Objectors continue to challenge, the basis for the objection by page number and line number.

The Objectors filed a stipulation stating: (1) the total number of signatures Brown continues to claim are valid is 574; (2) the total number of signatures the Objectors continue to challenge is 140; and (3) the total number of uncontested signatures remaining after the Objectors' challenges is 434. The Objectors filed an attachment listing the objections by page and line number and showing the basis for each challenge.[1] Brown filed a separate statement asserting that the Nomination Petition contains 767 signatures; Brown also filed an attachment listing the objections he still contests.

At the hearing, the parties stipulated that the Nomination Petition contained 767 signatures, 434 were valid, 252 were invalid and 81 were challenged. Upon further review of the 81 challenged signatures, it appeared that one was a duplicate.[2] Thus, there remained 80 challenges. Of these, the Objectors withdrew 42;[3] the court ruled that 5 were valid;[4] and the court ruled that 2 were invalid.[5] Thus, the total

---

1. Objectors also stated that counsel for Brown was unavailable, and Brown declined to sign the stipulation.

2. The duplicate objection was for page 4, line 17.

3. The Objectors withdrew their objections to the signatures at page 1, line 28; page 2, lines 8, 42; page 3, line 34; page 4, lines 4, 5, 11, 15, 17, 21, 32, 47, 48; page 5, lines 2, 7, 16, 17, 21, 22, 24, 39, 43; page 6, line 3; page 7, lines 4, 7, 22; page 8, line 12; page 9, lines 18, 35, 39; page 10, line 5; page 12, line 16; page 15, line 8; page 16, lines 20, 23; page 17, lines 9, 14, 21, 39; page 23, line 12; page 24, line 5; and page 26, line 3.

4. The court ruled that the signatures at page 2, line 23, and page 15, lines 10, 11, 21, were valid because, although they contained ditto marks for city, section 908 of the Pennsylvania Election Code (Election Code), Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. § 2868, does not require the entry of a city where all signers must reside in the same city. In addition, the court ruled that the signature at page 7, line 17, was valid because, contrary to the objection, the person was registered in the district.

5. The court ruled that the signatures at page 9, line 38, and page 16, line 44, were invalid. The court also ruled that the signature at page 16, line 41, was invalid because, although the handwriting of the last name matched the signature shown on the registration, the handwriting of the first name did not completely match the registration. However, a signature is presumed valid, and the Objectors had the burden of proving the invalidity of this signature. Therefore, the court has reconsidered this ruling because the handwriting of the first name was not so dissimilar that it should be struck. The court will con-

number of valid signatures was 434 + 47 (42 withdrawn + 5 ruled valid) = 481, with 31 challenges reserved for judgment.

### I. Not Registered in the District

Eighteen of the remaining objections allege that the signers of Brown's Nomination Petition are "not registered in the district." However, the Objectors agreed with Brown at the hearing that the signers *are* registered in the district.

### A. Specificity

■ Nevertheless, the Objectors argued that the signers are not registered in the district *as Democrats*[6] or *at the address* given on the Nomination Petition[7] or *both.*[8] The Objectors asserted that their "not registered in the district" objection encompasses these additional challenges. We disagree.

■ Section 977 of the Pennsylvania Election Code (Election Code), Act of June 3, 1937, P.L. 1333, *as amended,* 25 P.S. § 2937, states that a petition to set aside a nomination petition must "specifically" set forth the objections. This means that the allegations must state the specific grounds of invalidity so as to sufficiently advise the proposed candidate of the errors, so that he or she is in a position to present a defense. *In re Duffy,* 535 Pa. 286, 635 A.2d 111 (1993). In other words, the objections must be specific enough to give fair notice, which means that they must provide enough information to permit a reasonable person to ascertain the substance of the claimed deficiency and the proof that must be presented at the hear-

ing to mount a defense. *In re Bishop,* 525 Pa. 199, 579 A.2d 860 (1990); *In re Williams,* 155 Pa.Cmwlth. 494, 625 A.2d 1279 (1993).

With respect to the Objectors' allegation that certain signers are "not registered in the district," section 908 of the Election Code provides, in pertinent part:

> Each signer of a nomination petition . . . shall declare therein that he is a *registered and enrolled member of the party* designated in such petition. . . . He shall *also* declare therein that he is a *qualified elector . . . of the political district* therein named, in which the nomination is to be made or the election is to be held. He shall add his *residence, giving city, borough or township, with street and number, if any* . . . .

25 P.S. § 2868 (emphasis added). It is clear from the plain language of section 908 that (1) being registered in the appropriate party, (2) being registered in the political district and (3) adding one's residence to a nomination petition are three *separate* requirements. For that reason, we conclude that an objection stating *only* that a signer is "not registered in the district" does *not* sufficiently advise the proposed candidate to present a defense with respect to the signer's political party and residence.

### B. Amendment of Objections

In the alternative, the Objectors requested leave to amend their "not registered in the district" objections to include

---

sider the signature as part of the group of signatures that were challenged because they were allegedly signed by persons "not registered in the district."

**6.** The Objectors challenged page 1, line 17; page 5, lines 13, 38, 49; page 7, line 5; page 11, line 3; and page 16, line 47, on this basis.

**7.** The Objectors challenged page 1, line 23; page 5, line 5; page 6, lines 2, 13, 23; page 7, lines 20, 28; page 11, line 8; and page 16, lines 26, 41, on this basis.

**8.** The Objectors challenged page 5, line 30, on this basis.

a political party and/or a residence challenge.

■ It is true that this court has discretion to allow objections to be amended at the hearing. *Stuski v. Lauer*, 548 Pa. 338, 697 A.2d 235 (1997). In the exercise of that discretion, we keep in mind that: (1) there is a presumption that the signatures are valid;[9] (2) the Objectors have the burden of proving otherwise;[10] (3) the Election Code is to be construed so as not to deny a candidate the opportunity to run or deprive the electorate of the right to vote for the candidate of choice;[11] and (4) the protections offered by section 977 of the Election Code are not to be rendered nugatory, and the interests sought to be furthered are not to be defeated.[12]

## 1. Residence

■ With respect to a residence challenge, our supreme court has stated that, absent extraordinary circumstances, electors who declare a residence at an address different from the address listed on the registration card are not qualified electors at the time they sign a nomination petition, *unless* they have completed the removal notice required by statute. *In re Nomination Petition of Flaherty*, 564 Pa. 671, 770 A.2d 327 (2001). If allowed to amend, the Objectors would allege that, because the signers did not add their addresses to the Nomination Petition as they appear on the registrations, the signatures are invalid. However, *Flaherty* was decided before the enactment, in 2002, of the new Pennsylvania Voter Registration Act (Act), 25 Pa.C.S. §§ 1101–3302.

As to removal notices, section 1501(a)(5) of the Act states that a removal notice must be received or postmarked not later than 30 days before an election or, in the case of an illegible or missing postmark, within 5 days of the close of registration. 25 Pa.C.S. § 1501(a)(5). Section 1501(b)(2) of the Act states that a registered elector who removes his or her residence from one place to another within the same county and who has not yet filed a removal notice shall be permitted to vote **once** at the elector's **former** polling place if, at the time of signing the voter's certificate, the elector files a proper removal notice with the judge of election. 25 Pa.C.S. § 1501(b)(2). Finally, section 1901(d) of the Act states that the registration of a registered elector **shall not be cancelled** on the ground that the registered elector has changed residence unless specified statutory procedures are followed. 25 Pa. C.S. § 1901(d).

We will not allow the amendment because to do so would be pointless. Indeed, even if we were to allow the amendment, the addresses challenged here as different from those shown on the registrations would have no legal effect on the signers' status as a qualified and registered elector within the political district. *Id.* Moreover, the different addresses do not prevent the signers from voting at their former polling places in the primary election. Thus, Brown would prevail.[13]

---

9. See *In re Williams*, 155 Pa.Cmwlth. 494, 625 A.2d 1279 (1993).

10. See *In re Nomination Petition of Delle Donne*, 779 A.2d 1 (Pa.Cmwlth.), *aff'd*, 565 Pa. 561, 777 A.2d 412 (2001).

11. See *Delle Donne.*

12. See *Bishop.*

13. In addition, even if we were to allow the amendment, we would rule in Brown's favor with respect to the addresses provided at page 5, line 5, and page 6, line 13. In each instance, Brown presented credible and competent testimony that the signer's address either was within the same building as the address shown on the registration or was part of a complex of buildings used by a social services agency.

## 2. Political Party

■ With respect to a political party challenge, section 908 of the Election Code requires that the signer of a candidate's nomination petition declare at the time of signing that he or she is registered in the party of the candidate. 25 P.S. § 2868. If allowed to amend, the Objectors would allege, and would have to prove, that the signers were not registered Democrats at the time of signing; thus, their signatures are invalid.

Initially, we note that, because the parties were unable to meet prior to the hearing and to present a meaningful stipulation to the court, the parties attempted to short-cut the presentation of evidence at the hearing by the presentation of joint exhibits. While this court was open-minded about the allowance of the amendments, the parties accepted that the hearing was the time to present all evidence and to make all legal argument in support of, or in opposition to, the validity of the challenged signatures.

If Brown had notice that the Objectors would be challenging the signers' party affiliation, Brown would have had an opportunity to mount a defense, where appropriate, against the Objectors' party challenges by presenting proof that the signers were registered Democrats when

they signed the petition but, afterwards, changed their party affiliation from Democrat to another political party.[14] If we were to allow the Objectors to amend their objections to include a party challenge, we would deprive Brown of an opportunity to present such a defense. Thus, we will not allow the amendment.

Moreover, we note that the Objectors presented no evidence at the hearing to establish the party affiliation of the signers *at the time they signed the petition.* The Objectors only presented evidence that, *at the time of the hearing,* the signers were not registered Democrats.[15] Thus, even if we were to allow the amendment, we would have concluded that the Objectors failed to carry their burden.

With respect to the signature at page 1, line 17, the Objectors presented evidence at the hearing establishing that, on July 24, 2002, the signer's registered party was "other."[16] As stated, if Brown had had sufficient notice of a party challenge, it is possible that Brown could have mounted a defense by having the signer present credible evidence that she was a registered Democrat when she signed the Nomination Petition and that the voter registration authorities erroneously list her party as "other."[17] Accordingly, the request to

14. An elector may change party affiliation up to thirty days before a primary election. Sections 1326(b) & 1503 of the Act, 25 Pa.C.S. §§ 1326(b) & 1503. In fact, here, electors have until Monday, March 29, 2004, to change their political party affiliation before the primary election. *In re Nomination Papers of Lahr,* —— Pa. ——, 842 A.2d 327 (2004).

15. In presenting Joint Stipulation B, the parties simply indicated that it contains "what we observed on the computer cards." (N.T. at 103.) Thus, the stipulation constitutes evidence that the signers are not *now* registered as Democrats. The stipulation does *not* constitute evidence that the signers were not reg-

istered Democrats when they signed the Nomination Petition.

16. Absent countervailing evidence, such evidence could tip the scale in favor of the Objectors. However, standing alone, it is not *conclusive* evidence that the signer was not a registered Democrat when she signed the Nomination Petition.

17. We note that, if the Objectors had given Brown notice prior to the hearing of their intention to amend this objection at the hearing, this court would have been more inclined to allow the amendment. The Objectors had an opportunity to provide such notice to Brown when the parties met prior to the

amend the objection to the signature at page 1, line 17, is denied.

Based on the above discussion, we rule that the 18 signatures challenged as "not registered in the district" are valid, bringing the total number of valid signatures to 481 + 18 = 499.

## II. Ditto Marks for Residence

The Objectors argue that the three signatures at page 15, lines 10, 11 and 21, are invalid because the signers used ditto marks in the space provided for the signer's residence. We disagree. This court has denied a request to strike a signature because ditto marks were used for the signer's address. *In re Nomination Petition of Delle Donne,* 779 A.2d 1 (Pa. Cmwlth.), *aff'd,* 565 Pa. 561, 777 A.2d 412 (2001). Thus, the three signatures are valid, bringing the total number of valid signatures to 499 + 3 = 502.

Although Brown has the requisite number of signatures to be placed on the ballot, we shall address the remaining objections.

## III. Illegible Signature

■ Initially, the Objectors objected that the signature at page 18, line 45, is illegible, but, at the hearing, the Objectors agreed that the signature was legible. The Objectors then sought leave to amend the objection to state that the signer did not reside in the district. We deny the request for leave to amend because allowing the amendment would deprive Brown of an opportunity to contact the signer to determine whether the signer wrote the address incorrectly on the petition and actually resides within the district.

The total number of valid signatures now is 503.

hearing to review each of the challenged sig-

## IV. No Date

■ The Objectors maintain that eight signatures are invalid because the signer did not record the date of signing. We agree. Indeed, this court has held that a signature will be struck when the signer omits only the year in the date of signing. *In re Nomination Petition of Cooper,* 163 Pa.Cmwlth. 430, 643 A.2d 717 (1994). Thus, the eight signatures at page 5, line 3; page 9, line 4; page 10, line 3; and page 11, lines 11, 18, 21, 23, 30, are invalid and cannot be added to the number of valid signatures.

## V. Initial

■ The Objectors argue that the signature at page 13, line 4, is invalid because the signer used the initial of her first name instead of her full first name. We agree.

■ Where a signer uses simply the first letter of the first name, the signature may be stricken as an improper deviation from the elector's signature on the voter registration card. *In re Petition to Set Aside Nomination of Fitzpatrick,* 822 A.2d 859 (Pa.Cmwlth.) (citing *Cooper*), *appeal denied,* 573 Pa. 700, 825 A.2d 1262 (2003). It is a curable defect that requires direct evidence that the signer intended the first initial of the first name to be a substitute for the first name in the signature. *Id.* Here, however, the only evidence before the court was the voter registration card, which had the full name of the elector. Thus, the signature is invalid and cannot be added to the number of valid signatures.

## VI. Dates Out of Sequence

■ In addition to the 80 objections discussed above, the Objectors set forth 63

natures.

additional challenges,[18] contending that the signatures are invalid because the dates recorded by the signers are out of sequence.[19] However, this court has upheld signatures that appear out of sequence. *See Delle Donne; In re Freeman,* 115 Pa.Cmwlth. 300, 540 A.2d 606 (1988) (stating that it is not necessary for signatures to appear in chronological order). Thus, the challenged signatures are valid.

Because Brown has the requisite number of signatures, we deny the Objectors' petition to set aside Brown's nomination petition.

### ORDER

AND NOW, this 26th day of March, 2004, the "Petition to Set Aside Nomination Petition" filed by Louis Agre and Shirley Kitchen is denied.

18. The Objectors included these separate objections in Exhibit A of their petition to set aside Brown's Nomination Petition and in Joint Exhibits A and B, presented at the hearing. However, it is apparent that the Objectors did *not* include these objections in stipulating that the total number of valid signatures is 434. Thus, unlike the 80 challenges above, these challenges are actually challenges to the 434 "valid" signatures.

19. The Objectors challenge page 6, lines 9–37; page 8, lines 19–20; page 10, line 6; page 12, line 20; page 17, lines 48–50; page 19, line 27; page 20, lines 6–29; and page 24, lines 21–22, on this basis. Of these 63 objections, 47 objections are to signatures for dates out of sequence only. The remaining 16 objections are to signatures for dates out of sequence and on other grounds as well.