**In Re: NOMINATION PAPER OF Marakay ROGERS, Christina Valente and Carl J. Romanelli as Candidates of an Independent Political Body for Governor, Lieutenant Governor and U.S. Senator in the General Election of November 7, 2006.**

William R. Caroselli, Fred R. Levin, Daniel J. Anders and Peter D. Winebrake, Petitioners.

Commonwealth Court of Pennsylvania.

Heard Sept. 25, 2006.

Decided Sept. 26, 2006.

Publication Ordered Jan. 9, 2007.

Clifford B. Levine, Pittsburgh, for petitioners.

Lawrence M. Otter, Doylestown, for respondents.

OPINION BY Senior Judge KELLEY.

On August 1, 2006, Carl J. Romanelli, Candidate, filed a Nomination Paper with the Secretary of the Commonwealth seeking to have his name printed on the Pennsylvania General Election Ballot in the General Election to be held on November 7, 2006, as an Independent Political Body Candidate for the Office of United States Senator.[1] The Secretary of the Commonwealth calculated that the Nomination Paper must contain 67,070 valid signatures in order for Candidate's name to appear on the ballot.[2] On August 8, 2006, William R. Caroselli, Fred R. Levin, Daniel J. Anders and Peter D. Winebrake (hereinafter referred to as "Petitioners") filed a Petition to Set Aside the Nomination Paper of Marakay Rogers, Christina Valente and Carl J. Romanelli as Candidates of an Independent Political Body for Governor, Lieutenant Governor and U.S. Senator of the United States (Petition to Set Aside), challenging the validity of over 69,000 signatures contained in Candidate's Nomination Paper.[3]

---

1. On the various pages of his Nomination Paper, Candidate states that he is a member of the Pennsylvania Green Party.

2. This number is calculated under Section 951 of the Election Code, Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. § 2911, by taking two percent of the "largest entire vote for any elected candidate in the State at large in the last preceding election at which Statewide candidates were voted for." This Court has previously determined that the relevant "last preceding election" was the election of Bob Casey, Jr., as Treasurer in the 2004 General Election rather than the retention vote of Justice Sandra Shultz Newman in 2005 General Municipal Election and because Casey garnered 3,353,489 votes in that election, we agreed with the Secretary of the Common-

wealth that the two percent rule required 67,070 valid signatures. *See In re Nomination Papers of Rogers, et al.*, 913 A.2d 298 (Pa.Cmwlth.2006), *petition for allowance of appeal granted*, —— Pa. —— (No. 122 MM 2006, filed September 15, 2006) (The permission to appeal is limited to the controlling question of law of whether the 2005 Judicial Retention Election or the 2004 General Election constitutes the "last preceding election in which State-wide candidates were voted for" under Section 951(b) of the Election Code, 29 P.S. § 2911(b)).

3. On August 14, 2006, Marakay Rogers and Christina Valente filed a petition to withdraw their nomination papers, which was granted by this Court by order dated August 18, 2006.

On August 9, 2006, President Judge Co-lins issued a Memorandum and Pre–Hearing Order wherein he ordered counsel for Candidate and Petitioners and at least nine individuals for each party, to meet on Monday, August 14, 2006, at 8:30 a.m., with personnel of this Court and the Pennsylvania Department of State to commence a simultaneous nine-station review of the challenged signatures utilizing the Statewide Uniform Registry of Electors (SURE System) with the goal of stipulating to the validity and invalidity of a substantial number of the over 69,000 signatures challenged. Pursuant to that order, a review of the challenged signatures has been ongoing since August 14, 2006, in accordance with a stipulated Protocol for Signature Review entered into on August 24, 2006, between counsel for Candidate and counsel for Petitioners.

On August 25, 2006, this Court entered an order directing that evidentiary hearings on Petitioners' Petition to Set Aside commence on September 14, 2006 at 9:30 a.m., Courtroom Number 2, Harrisburg, Pennsylvania. Thereafter, the parties filed several motions including Petitioners' Motion in Limine to Enforce Stipulations and to Identify any Evidence Candidate Intends to Present at the Hearing Seeking to Negate Stipulations (hereinafter referred to as "Motion in Limine"). On September 8, 2006, this Court entered an order directing that arguments with respect to Petitioners' Motion in Limine would be heard at the September 14, 2006 evidentiary hearing. Therein, Petitioners requested that this Court require Candidate to identify with specificity (including page and line) each and every signature to which the parties have stipulated as invalid and which Candidate seeks to rehabilitate, along with the proposed extrinsic evidence Candidate intends to introduce. Petitioners further requested that Candidate be precluded from challenging any stipula-tions if such stipulated signature is not specifically identified along with supporting evidence. In his reply to the Motion in Limine, Candidate, *inter alia*, "reserved the right to amend and/or rehabilitate all challenged signatures pursuant to the rulings of the Court."

This Court also entered a separate order on September 8, 2006, directing the parties to stipulate in open court for the record setting forth, as of 8:00 p.m., E.D.S.T., September 13, 2006:(1) the counties for which signature lines have been reviewed; (2) of the 93,829 signatures, the total signature lines that have been reviewed; (3) of the 93,829 signatures, the total signature lines stipulated valid; (4) of the 93,829 signatures, the total lines stipulated invalid; and (5) of the 93,829 signatures, the total signature lines disputed. The Court further ordered that said stipulation shall be submitted into the record at the commencement of the evidentiary hearings scheduled to begin at 9:30 a.m., E.D.S.T., before this Court on September 14, 2006, in Courtroom Two, Fifth Floor, Irvis Office Building, Harrisburg, Pennsylvania.

On September 11, 2006, counsel for Candidate and Petitioners entered into and filed with this Court an Amended Joint Stipulation Certifying the Total Number of Signatures. Therein, counsel stipulated that the Nomination Paper consists of 3,702 petition pages and originally contained 99,802 signatures. Counsel, after compromising their different counts, further stipulated that 5,973 signatures were struck as invalid before filing the Nomination Paper and therefore are invalid signatures leaving the number of signatures contained in the Nomination Paper prior to any other challenges or reviews as 93,-829. Finally, counsel stipulated that the total number of signatures that Petitioners must successfully challenge as invalid to

set aside the Nomination Paper is at least 26,760.

After several pre-hearing motions, arguments, conferences, and subsequent orders, this Court held the initial evidentiary hearing in this matter at 9:30 a.m., E.D.S.T., on September 14, 2006, in Courtroom Number 2, Irvis Office Building, Harrisburg, Pennsylvania. Present for the hearing were: (1) Candidate; (2) Larry Otter, counsel for Candidate; (3) Clifford Levine, counsel for Petitioners; (4) Shawn Gallagher, counsel for Petitioners; (5) Albert Masland, counsel for the Pennsylvania Department of State; (6) Kenneth Henderson, counsel for the Pennsylvania Department of Revenue; and (7) Robert Shea, counsel for the Pennsylvania Department of Transportation. Initially, Mr. Masland, on behalf of the Secretary of the Commonwealth, stipulated that the Secretary had been properly served with the Petition to Set Aside.

The hearing ensued during which Petitioners called witnesses and admitted into evidence Exhibits P1–P19, P20, P21, P22, P23, P24, P25, P26, P27, P35, P36, P27 and P38.[4] After a recess requested by Candidate's counsel to discuss an agreement of stipulations, counsel submitted for the record, a documented joint stipulation, entitled Joint Stipulation Related to Calculation of Invalid Signatures (Joint Stipulation). The Joint Stipulation was marked and admitted into evidence as Exhibit P38. Therein, Mr. Otter, as counsel for Candidate, and Mr. Levine, as counsel for Petitioners, stipulated that the calculations and numbers set forth in Exhibit P27 are an accurate summary of the calculations and numbers set forth in Exhibits P1–P21 [5] introduced at the hearing and further that the term "invalid" refers to signatures that are facially invalid. Exhibit P27, entitled Calculations of Invalid Signatures Based on Stipulations, sets forth the following calculations:

| | |
|---|---|
| Total Signatures | 93829 |
| Stipulated Invalid | 30758 |
| Code 30 Adjustment | -1081[6] |
| **Net Invalid** | **29677** |
| Total Signatures | 93829 |
| Net Invalid | 29677 |
| Remaining Signatures | 64152 |
| Signatures Required | 67070 |
| **Deficit** | **-2918** |

4. Specifically, these exhibits are:

| | |
|---|---|
| P1–P19 | Proposed Stipulations, Vols. 1 through 19 |
| P20 | Summary of Stipulations by Petition Page |
| P21 | Summary of Stipulations by County |
| P22 | Amended Joint Stipulation Certifying Total Number of Signatures |
| P23 | Joint Stipulation that the Petitioners are Registered Voters in PA |
| P24 | Summary Page of Coded Challenges |
| P25 | Samples of Petition Page Stipulation Totals |
| P26 | Protocol For Signature Review |
| P27 | Calculations of Invalid Signatures Based on Stipulations |
| P35 | Summary of Daily Stipulations Associated with Signature Review |
| P36 | Summarizing Worksheets |
| P37 | Summary By Volume |
| P38 | Joint Stipulation Related To Calculation Of Invalid Signatures |

5. As directed by the August 9, 2006 order of this Court that the same be accomplished by SURE System access.

6. This number, −1081, called a "Code 30 Adjustment" represents two adjustments to the total number of signatures stipulated invalid. The first adjustment was to subtract from the total number of signatures stipulated invalid, the number of signatures that the Secretary of the Commonwealth had already stricken as invalid. The second adjustment was to add back into the total number of signatures stipulated invalid, the signature lines where the signator's address on the Nomination Paper did not match the address of a registered voter as a result of President Judge Colins September 1, 2006 ruling that any addresses on the Nomination Paper that fail to match an address on the registration records will be found to be invalid at any hearing in this matter pursuant to our Supreme Court's decision in *In re Nomination Petition of Flaherty,*

Counsel further stipulated in the Joint Stipulation that, subject to Petitioners' pending Motion in Limine and Pennsylvania Law, counsel for Candidate may attempt to rehabilitate invalid signatures. Finally, counsel stipulated that, as of the close of business on September 13, 2006, Candidate would have to rehabilitate at least 2,918 of the "invalid" signatures to remain on the ballot.

Thus, Candidate conceded that Petitioners had reached and gone beyond by 2,918 signatures, the total number of signatures, specifically 26,760, that Petitioners had to successfully challenge as invalid to set aside the Nomination Paper. With respect to Candidate's proposed rehabilitation, the Court found it necessary for Candidate to specify which categories or legal classifications and invalid signature lines Candidate believes are subject to rehabilitation, and what evidentiary means Candidate intends to offer in order to rehabilitate any stipulated invalid signature lines. This was set forth by separate order entered September 15, 2006.

It was further stipulated in open court by counsel for the parties that each understood that the original proceedings would continue as ordered by this Court on August 9, 2006 and that the counting would continue utilizing the SURE System. Counsel also stipulated that the daily results of the ongoing counting would be considered as additional stipulations by counsel and that the daily results would be cumulative to the numbers of valid and invalid signatures as was stipulated by the Joint Stipulation entered into the record as Exhibit P38, which incorporates the numbers set forth in Exhibit P27, Calculations of Invalid Signatures Based on Stipulations. Accordingly, counsel for the parties understood that the 2,198 figure, which represents the number of stipulated invalid signatures that Candidate would need to rehabilitate to remain on the ballot, would continue to rise significantly.

On September 20, 2006, September 21, 2006, and September 22, 2006, counsel for the parties entered into and filed with this Court a Second Joint Stipulation Related to Calculation of Invalid Signatures, Third Joint Stipulation Related to Calculation of Invalid Signatures, and Fourth Joint Stipulation Related to Calculation of Invalid Signatures, respectively, stipulating to the accuracy of the calculations and numbers of the total signatures reviewed and stipulated to by the parties as facially invalid as of September 20, 2006, September 21, 2006, and September 22, 2006.[7] The Fourth Joint Stipulation Related to Calculation of Invalid Signatures stipulates that the following calculations and numbers are an accurate summary of the total signatures reviewed and stipulated to by the parties as facially invalid as of September 22, 2006 at 4:15 p.m.:

| | |
|---|---|
| Total Signatures | 93829 |
| Stipulated Invalid | 36771 |
| Code 30 Adjustment | -1081[8] |
| **Net Invalid** | **35690** |
| Total Signatures | 93829 |
| Net Invalid | 35690 |
| Remaining Signatures | 58139 |
| Signatures Required | 67070 |
| **Deficit** | **-8931** |

564 Pa. 671, 770 A.2d 327 (2001). *See In re Nomination Papers of Rogers, et al.,* 908 A.2d 942 (Pa.Cmwlth.2006). This type of challenge was originally placed in the disputed column; therefore, it was subtracted from the total number of disputed signatures and added to the total number of stipulated invalid signatures. The adjustments resulted in a net number of 1081 being subtracted from the total stipulated invalid signatures. *See* Transcript of Proceedings of September 14, 2006 Hearing at 42–45.

7. These stipulations were submitted into evidence before this Court at the September 25,

As a result of the proceedings on September 14, 2006, this Court entered a Memorandum and Order on September 15, 2006, wherein this Court specifically ordered Candidate to file with this Court and serve upon counsel of record for Petitioners and the Secretary of the Commonwealth, Department of State, on or before 3:00 p.m., E.D.S.T., Tuesday, September 19, 2006, the following:

 a. The intended rehabilitation setting forth the specific legal classifications or categories of the intended rehabilitation referring to and paralleling the codes that Petitioners outlined in the Petition to Set Aside;

 b. The evidentiary methodology by which Candidate intends to utilize in order to rehabilitate specific stipulated invalid signatures lines; and

 c. A brief in support of the legal classifications or categories of specific stipulated invalid signature lines. Said brief shall also address the issues raised in Petitioners' Motion in Limine.

At approximately 1:30 p.m. on September 19, 2006, Mr. Otter, on behalf of Candidate, filed with this Court a document entitled "Memorandum in Support of Rehabilitation of Challenged Signatures" (Memorandum). On September 21, 2006, Petitioners filed a timely response to Candidate's Memorandum. On September 25, 2006, at 8:41 a.m., Candidate filed with this Court "Candidate's First Filing of 5,300 Rehabilitated Registered Voters who Signed the Romanelli Nomination Papers but were Incorrectly Denominated as Invalid During the Court Ordered Review" (Candidate's First Filing).

At 9:00 a.m., E.D.S.T., on September 25, 2006, the Court reconvened the evidentiary hearing in this matter in Courtroom Number 1, Irvis Office Building, Harrisburg, Pennsylvania. Present for the hearing were: (1) Larry Otter, counsel for Candidate; (2) Clifford Levine, counsel for Petitioners; (3) Shawn Gallagher, counsel for Petitioners; (4) Louis Lawrence Boyle, Deputy Chief Counsel for the Department of State; and (5) Albert Masland, counsel for the Pennsylvania Department of State.

The Court heard argument from Attorney Boyle in support of the Application of Pedro A. Cortés, Secretary of the Commonwealth, for Limited Leave to Intervene. The Court granted the application for the limited purpose of defending Candidate's attack upon the validity of the SURE System. At the request of the Court, Attorney Boyle offered into evidence two Exhibits, identified as Intervenor's Exhibits 1 and 2, certifying the total number of "yes" and "no" retention votes Justice Sandra Schultz Newman received at the 2005 General Municipal Election. Intervenor's exhibits were admitted without objection.

The Court also considered Petitioners' Motion to Hold Counsel and Candidate in Contempt of Court and to Seek Sanctions, which stemmed from the conduct of Candidate and his counsel on September 7, 2006. However, upon consideration of the proceedings on September 25, 2006, the Court will dismiss this motion without prejudice.

The hearing on the Petition to Set Aside ensued during which Petitioners in-

2006 as Petitioners' Exhibits P27a, P27b, P27c, P38a, P38b, and P38c.

8. See footnote 6, *supra*.

troduced Exhibits P1a–P19a, P20a, P21a, P27a, P27b, P28c, P38a, P38b, P38c, and P39.[9] As set forth above, the parties stipulated that as of Friday, September 22, 2006 at 4:15 p.m., Petitioners had gone beyond by 8,931 signatures, the total number of signatures that Petitioners had to successfully challenge as invalid to set aside the Nomination Paper. *See* Petitioners' Exhibit P38c. The remaining challenged signatures remaining to be reviewed at that time was 12,822. *See* Petitioners' Exhibit P39. Thus, even if all of the remaining challenged signatures were reviewed and determined to be valid, Candidate would still be 8,931 short of the valid signatures needed to overcome the Petition to Set Aside. At this juncture, the only way Candidate could successfully overcome the Petition to Set Aside is to rehabilitate, at a minimum, 8,931 stipulated invalid signatures.

Candidate, through Mr. Otter, set forth various reasons why he believed that Candidate would be able to successfully rehabilitate a sufficient number of previously stipulated invalid signatures in order to defeat the challenges set forth in the Petition to Set Aside. Mr. Otter's reasons mirrored those set forth in the Memorandum filed with this Court purportedly in compliance with this Court's September 15, 2006 order. However, as explained to Mr. Otter in open Court, a thorough review of this Memorandum reveals two things. First, that Candidate has been disingenuous in his representations to this Court and second, that Candidate has failed to comply with this Court's order of September 15, 2006.

With respect to the representations made in the Memorandum, on page one Candidate restates his version of the directives set forth by President Judge Colins in the August 9, 2006 Memorandum and Pre–Hearing Order. Candidate states that President Judge Colins issued an order which required the parties' representatives and their counsel to meet on August 14, 2006 at the Department of State Offices, Harrisburg, Pennsylvania, to begin reviewing the signatures on the Nomination Paper using the SURE System. This statement omits the reference in President Judge Colins' August 9, 2006 Memorandum and Order to the goal set forth therein. Specifically, President Judge Colins ordered the parties "to commence review of the challenged signatures utilizing SURE System access with the goal of *stipulating to the validity or invalidity* of a substantial number of the 69,000 + signatures challenged" (emphasis added). In other words, President Judge Colins did not just order the parties to meet and review signatures with no purpose or goal in mind; he ordered the parties to commence a review in order to reach a stipulation as to the number of valid and invalid signatures.

9. At the September 25, 2006 hearing, Petitioners presented amended exhibits, which were admitted into the record without objection. Specifically, these exhibits are:

| | |
|---|---|
| P1a-P19a | Proposed Stipulations, Vols. 1 through 19 |
| P20a | Summary of Stipulations by Petition Page |
| P21a | Summary of Stipulations by County |
| P27a | Second Calculations of Invalid Signatures Based on Stipulations |
| P27b | Third Calculations of Invalid Signatures Based on Stipulations |
| P27c | Fourth Calculations of Invalid Signatures Based on Stipulations |
| P38a | Second Joint Stipulation Related To Calculation Of Invalid Signatures |
| P38b | Third Joint Stipulation Related To Calculation Of Invalid Signatures |
| P38c | Fourth Joint Stipulation Related To Calculation Of Invalid Signatures |
| P39 | Summary of Reviewed Signatures and Statistical Projections |

Exhibits P1a–P19a, P20a, P21a, P27a, P27b, P28c, P38a, P38b, P38c, are updated exhibits; P39 is a new exhibit.

Candidate was bound by the August 9, 2006 Memorandum and Pre–Hearing Order to make a good faith effort to reach the goal clearly set forth therein. Consequently, it should go without saying that Candidate is bound by any and all stipulations that his counsel entered into on his behalf in this matter.

Another example of Candidate's disingenuous conduct is Candidate's attempt to raise matters regarding the review of the challenged signatures which should have been raised during the course of the review. Specifically, Candidate questions the reliability, uniformity and accessibility of the SURE System. If an issue arose during the review process with the SURE System or with regard to another matter which Candidate did not agree, he should have come into Court with an appropriate motion to resolve the issue at the time those issues arose.[10] For Candidate to raise these issues or matters at this point is nothing more than questionable on the part of Candidate. The Court notes that Candidate did raise issues with the SURE System in Candidate's reply to the Motion in Limine; however, Mr. Otter failed to argue these issues on behalf of Candidate at the September 14, 2006 evidentiary hearing. In this Court's opinion, Candidate has effectively waived these issues and to permit consideration of these collateral issues at this point in time would thwart the duty and responsibility of this Court to dispose of this election matter in an expedited manner.

Candidate's counsel was advised by this Court more than once during the proceedings conducted on September 14, 2006, that the Court expected all counsel to act in good faith and that the Court expected nothing but candor from counsel. As recently noted by this Court:

> An attorney's obligation to the court is one that is unique and must be discharged with candor and with great care. The court and all parties before the court rely upon representations made by counsel. We believe without qualification that an attorney's word is his bond.

*Great Valley School District v. Zoning Hearing Board of East Whiteland Township*, 863 A.2d 74, 79 (Pa.Cmwlth.2004), *petition for allowance of appeal denied*, 583 Pa. 675, 876 A.2d 398 (2005) (citing *LaSalle National Bank v. First Connecticut Holding Group, L.L.C. XXIII*, 287 F.3d 279, 293 (3d Cir.2002) (quoting *Baker Industries, Inc. v. Cerberus, Ltd.*, 764 F.2d 204, 212 (3d Cir.1985))).

With regard to compliance with this Court's order of September 15, 2006, as stated previously herein, Candidate was ordered to file with this Court: (a) the intended rehabilitation setting forth the specific legal classifications or categories of the intended rehabilitation referring to and paralleling the codes that Petitioners outlined in the Petition to Set Aside; (b) the evidentiary methodology by which Candidate intends to utilize in order to rehabilitate specific stipulated invalid signatures lines; and (c) a brief in support of the legal classifications or categories of specific stipulated invalid signature lines. The intent of this order was made clear on the record at the hearing on September 14, 2006 and in this Court's memorandum filed with the order of September 15, 2006.

The Memorandum filed by Candidate in purported compliance with this Court's order does have a section entitled "Legal Argument" and under that section is a

---

10. The Court notes that when Petitioners questioned the process, counsel filed appropriate motions to resolve any uncertainty.

subsection entitled "Categories." However, under the subsection entitled "Categories", Candidate merely sets forth generalizations, not specifics, and offers absolutely no precedent to support that any of the "categories" listed are capable of rehabilitation by extrinsic evidence. In addition, Candidate fails to set forth with specificity which stipulated invalid signature lines he purports may be rehabilitated and the evidentiary methodology Candidate intends to utilize in order to rehabilitate any specific stipulated invalid signature lines.

Moreover, while Candidate's First Filing purportedly sets forth 5,300 "invalid" signature lines that Candidate believes are capable of rehabilitation, this document is merely a running list of challenged signature lines without any explanation whatsoever, other than a voter identification number, of which possible legal category those lines would fall under for purposes of rehabilitation.[11] A review of these 5,300 lines reveals that many of the lines are in fact signature lines that the parties have stipulated as "disputed" not "invalid".[12] This is disingenuous on the part of Candidate as the inclusion of disputed lines imputes a lack of candor to the entire offering and proposed rehabilitation.

Finally, Candidate makes no effort to show statistically that he is able to rehabilitate the required number of stipulated invalid signature lines in order for the Petition to Set Aside to be denied and for Candidate's name to remain on the ballot. In fact, Candidate's First Filing only attempts to rehabilitate 5,300 signature lines which is well below the 8,931 stipulated

invalid signatures Candidate must rehabilitate in order to overcome the Petition to Set Aside. Candidate was given more than sufficient time to make the required filings and his non-compliance only resulted in the resolution of this matter being delayed by one additional week.

■ Notwithstanding the foregoing and in the interest of fairness and due process, this Court will address briefly each "category" that was presented, albeit vaguely, by Candidate. First, Candidate takes issue with Petitioners' position that an address listed by a voter on the Nomination Paper which differs from the address listed by a voter on the SURE System voter record is a fatal defect which always invalidates the voter's signature on the Nomination Paper. Contrary to Candidate's assertions, Petitioners' position is correct as this is the state of the law in Pennsylvania. *See In re Nader,* 580 Pa. 22, 858 A.2d 1167 (2004).

When electors move, they must notify the registration commission of their new address by filing a removal notice generally no later than 30 days preceding an election. *See* Section 1501 of what is commonly referred to as the Voter Registration Act, 25 Pa.C.S. § 1501. As stated in *Nader,* "absent **extraordinary circumstances, an individual who signs a nomination petition that lists an address other than the one provided on his voter registration card is not a qualified elector."** *Nader,* 580 Pa. at 50, 858 A.2d at 1183 (emphasis added).

---

11. The Court notes that there must have been some basis for the invalid stipulation, such as an incorrect address, otherwise, Candidate would not have stipulated that the signature was invalid. The existence of a voter identification number, without more, is insufficient to establish rehabilitation.

12. For example, a cursory review of the Official Proposed Stipulations, Volume 1, Petition Pages 1–200 shows that the following specific signature lines are marked disputed: Page 68, lines 53 and 60; Page 69, lines 1, 12–13, and 16; Page 70, lines 4, 6, 13, 15, and 26; and Page 71, line 25. *See* Petitioners' Exhibit P1a.

Candidate offers no assertion that he will attempt to rehabilitate any signature stipulated invalid because the address listed by an elector on the Nomination Paper is different than the address listed for that elector on the SURE System by offering evidence that the elector moved and properly completed the required removal notice. Accordingly, Candidate's argument that, because an elector is assigned a "unique SURE registration number" there is conclusive proof that the person is a registered voter and a qualified elector capable of signing a nomination petition, must fail.[13]

Next, Candidate states that challenges to the handwriting of a registered voter and qualified elector are another grouping Petitioners have utilized in the Petition to Set Aside. Candidate further states that, during the review process, Petitioners have consistently challenged signature lines, signatures of registered voters and qualified electors where it is clear that the signature matches the signature exemplar that appears in the SURE System. However, Candidate fails to specify if he is referring to signature lines which he has disputed or which he has stipulated invalid, and which specific invalid signature lines

to which he is referring or any evidentiary method he will utilize to rehabilitate these signatures. During the course of the September 25, 2006 hearing, Mr. Otter, on behalf of Candidate, admitted that some of the signatures Candidate is attempting to rehabilitate are disputed signatures, not invalid signatures. Notwithstanding this fact, if Mr. Otter has stipulated on behalf of Candidate that this type of signature is invalid, Candidate is bound by that stipulation.

Next, Candidate states that Petitioners have consistently challenged in the review process signatures of registered voters and qualified electors where the signature block contains a notation that "no signature is on file" or similar wordings, even where everything else matches. Candidate argues that fundamental fairness, equal protection and due process of law suggest that the failure of the system to contain a handwriting exemplar cannot be held against Candidate. Again, Candidate fails to specify if he is referring to signature lines which he has disputed or which he has stipulated invalid, and which specific invalid signature lines to which he is referring or any evidentiary method he will utilize to rehabilitate these signatures.

---

**13.** Candidate states in the Memorandum that our Supreme Court's decisions in *Nader* and *In re Nomination Petition of Flaherty*, 564 Pa. 671, 770 A.2d 327 (2001) are not as clear as Petitioners believe. Citing to this Court's decision in *In re Creighton*, 899 A.2d 1166 (Pa. Cmwlth.), *aff'd per curiam*, 586 Pa. 652, 896 A.2d 583 (2006), Candidate points out that during the primary election challenge period, this Court ignored the strict language of *Nader* and *Flaherty* in allowing incumbent legislators to remain on the ballot. However, Candidate's recitation of this Court's holding in *Creighton* is inaccurate. In that case, this Court held that held that electors' use of mailing address, rather than place of residence, on nomination petition was not a material defect. Contrary to Candidate's implication, *Creighton* did not deal with the issue of whether the electors were registered at an address different than that listed on the nomination papers. In fact, this Court, citing to *Nader* and *Flaherty* acknowledged that our Supreme Court has tightened the standard for the address portion of a nomination petition. This Court pointed out, as has been done herein, that under *Nader* and *Flaherty*, absent extraordinary circumstances, the elector's address must conform with the elector's address as it appears on the voting registration card. The Court further pointed out that neither *Nader* nor *Flaherty* dealt with the specific issue presented in *Creighton* of whether an elector's signature should be stricken when the elector uses his or her mailing address rather than the municipality in which he or she resides.

The Court believes this type of signature should be included in the disputed category during review and, as stated previously herein, during the course of the September 25, 2006 hearing, Mr. Otter, on behalf of Candidate, admitted that some of the signatures Candidate is attempting to rehabilitate are disputed signatures, not invalid signatures. However, if Mr. Otter has stipulated, on behalf of Candidate, that this type of signature is invalid, Candidate is bound by that stipulation.

Next, Candidate refers to the challenges based on ditto marks. Without citing to any precedent, Candidate states that the case law in this area goes in both directions but he believes that there are a small number of signatures in this category. Candidate requests that given the lack of clarity on this issue, this Court should examine this small number of signatures to determine the validity of the registered voter's signature especially where that voter has been assigned a "unique SURE registration number." The Court declines. Even if this Court were to conclude that such lines are capable of rehabilitation, Candidate fails to specify which stipulated invalid signature lines he wishes to rehabilitate in this category or the extrinsic evidence which he intends to introduce to rehabilitate such signature lines.

Next, Candidate refers to Petitioners' challenges based on a "post circulation date" and states that Petitioners have taken the position that these types of signatures that do not have a proper date should be invalidated. Candidate contends that this is not the law in Pennsylvania and believes that this challenge involves a small number of signatures. Candidate offers no legal authority to support his statement that "this is not the law in Pennsylvania" or that this type of signature may be rehabilitated by extrinsic evidence. While this Court has not found any cases directly on point,[14] the instructions on the affidavit section of the nomination paper clearly provide: "The affidavit may not be completed until after circulation (in other words, after the last signature is obtained in Section C)." Therefore, the Court declines to permit Candidate an attempt to rehabilitate this category of invalid signatures.

Next, Candidate refers to Petitioners' challenges based on the "signature or information written in the hand of another." Candidate states that this type of challenge is highly subjective and may require objectors to produce expert testimony and these signatures are subject to judicial review in the rehabilitation process. Mr. Otter, on behalf of Candidate, states further that he is familiar with this process and will not protest an objective and obvious irregularity when these types of signatures are reviewed. Once again, if Mr. Otter, on behalf of Candidate, has stipulated that this type of signature is invalid, Candidate is bound by that stipulation. Nevertheless, Candidate has again failed to comply with this Court's order by failing to identify the signatures in this category and the evidentiary methodology that Candidate intends to utilize to rehabilitate

**14.** This Court has held that where a signer does not record the date of signing, the signature will be struck. *In re Nomination Petition of Brown*, 846 A.2d 783 (Pa.Cmwlth.2004). Indeed, this Court has held that a signature will be struck when the signer omits only the year in the date of signing. *Id.; In re Nomination Petition of Cooper*, 163 Pa.Cmwlth. 430, 643 A.2d 717 (1994). However, this Court has upheld signatures that appear out of sequence. *Brown*, 846 A.2d at 790 (Pa. Cmwlth.2004) (citing *In re Nomination Petition of Delle Donne*, 779 A.2d 1 (Pa.Cmwlth.), *aff'd*, 565 Pa. 561, 777 A.2d 412 (2001); *In re Freeman*, 115 Pa.Cmwlth. 300, 540 A.2d 606 (1988) (stating that it is not necessary for signatures to appear in chronological order)).

such signatures. Therefore, this Court will not be reviewing this type of invalid signature.

In addition, the Court finds that this type of challenge, as other types discussed previously herein, should clearly be in the disputed category, which category the Court did not direct Candidate to set forth in his intended rehabilitation. The Court points out that even if Petitioners were unable to meet their burden of proving that the disputed signatures are invalid, Candidate would still be unable to overcome the 8,931 deficit. The disputed signatures are irrelevant to the instant proceeding as the number disputed signatures do not comprise the number of stipulated invalid signatures.

Next, Candidate states that Petitioners' challenge code 36 was not brought on a timely basis. Code 36 challenges multiple signatures, specifically that the signature signed on a line is the signature of the same registered elector who signed the Nomination Paper on another page/line. This Court finds that Candidate's argument that the challenge is not timely is waived. Code 36 was set forth in the Petition to Set Aside and should not be a surprise to Candidate at this point in the proceedings.

Finally, under the subsection entitled "Categories" in his Memorandum, Candidate states that the Petitioners' booklets include a number of duplicative challenges that were obviously placed in the books in error. Candidate contends that these duplicates need to be removed from the total invalid count to eliminate the double counting of certain invalid signatures. The foregoing two sentences are the totality of Candidate's argument on this point. This argument is waived by Candidate as he failed to raise this issue before this point in the proceedings and he makes absolute-

ly no effort to clarify or specify for this Court as to what he is referring.

The final point the Court wishes to address is Candidate's contention in section C of the Memorandum entitled "Qualified Elector Issue", wherein Candidate raises the issue of whether an elector must be registered to vote in order to be a qualified elector. Candidate states that he maintains that "qualified elector" as opposed to "registered voter" is the proper standard for review of signatures in a third party challenge case.

This issue was decided by President Judge Colins in his September 1, 2006 Memorandum Opinion and Order wherein it was held that an elector must be registered in order to be qualified. *See In Re: Nomination Papers of Rogers, et al.*, (Pa. Cmwlth., No. 426 M.D.2006, filed September 1, 2006). Candidate acknowledges that our Supreme Court refused to grant allocatur on this issue. As such, this is the law of the case and it is disingenuous of Candidate to raise this issue again.

This Court is of the opinion that Candidate has not been a role model in response to the Petition to Set Aside. Candidate was not cooperative, often times disingenuous to the process. There is a duty and obligation upon the parties, counsel and this Court to advance the proceedings because of the Court's mandate under the Election Code to resolve these matters expeditiously. It must be recognized in the election process that there is the right of a candidate to participate and the right to challenge the validity of a candidacy. The parties must proceed with the greatest candor to ensure that the process moves quickly and efficiently. A candidate who is cooperative does not delay in such important matters.

Candidate has had more than adequate time to comply with the orders of this Court. Candidate's failure to comply

alone is a sufficient reason to disallow rehabilitation, regardless of waiver. This Court believes that Candidate's cumulative disingenuousness in these proceedings has crossed the line into bad faith on the part of Candidate and his counsel.

Because the line review, to which counsel for Candidate has stipulated, conclusively proves that Candidate has failed to secure the required number of valid signatures under the law, and as Candidate failed to show to this Court that he is able to rehabilitate a sufficient number of the stipulated invalid signatures to reach the required 67,070 number of valid signatures required under the law, this Court had no alternative but to grant Petitioners' Petition to Set Aside and set aside the Nomination Paper of Carl J. Romanelli for Independent Political Body Candidate for United States Senator.

### ORDER

AND NOW, this 26h day of September, 2006, it is hereby ordered:

1. The Application of Pedro A. Cortés, Secretary of the Commonwealth, for Limited Leave to Intervene is granted for the limited purpose of defending Candidate's attack upon the validity of the SURE System.

2. Petitioners' Motion in Limine to Enforce Stipulations and to Identify any Evidence Candidate Intends to Present at the Hearing Seeking to Negate Stipulations, as modified by this Court, is granted;

3. The Motion to Dismiss Global Challenges to Circulator's Affidavits on Constitutional Grounds is dismissed as moot;

4. Petitioners' Motion to Hold Counsel and Candidate in Contempt of Court and to Seek Sanctions is dismissed without prejudice;

5. The daily review of challenged signatures ordered by this Court on August 9, 2006 is stayed;

6. Candidate Carl J. Romanelli shall bear the costs incurred by all parties in this matter. Petitioners and all other parties of record shall file a bill of costs with the Chief Clerk on or before October 2, 2006; and

7. The Petition to Set Aside the Nomination Paper of Marakay Rogers, Christina Valente and Carl J. Romanelli as Candidates of an Independent Political Body for Governor, Lieutenant Governor and U.S. Senator of the United States is granted and the Nomination Paper of Carl J. Romanelli for Independent Political Body Candidate for United States Senator is set aside. The Prothonotary is directed to notify the parties and their counsel of this order and also certify a copy thereof to the Secretary of the Commonwealth, forthwith.